THOMAS et al. v. EAST TENNESSEE, V. & G. RY. CO. (AUGUST et al., Interveners).

(Circuit Court, N. D. Georgia. May 9, 1894.)

DEATH BY WRONGFUL ACT—ACTION BY WIFE — EFFECT OF SUBSEQUENT MARRIAGE.

M. and F., after a marriage ceremony while slaves, lived together in Georgia as husband and wife, and continued to do so until after Act Ga. March 9, 1866 (Code, § 1667), confirming for all civil purposes the marriage of persons of color. In 1867 they separated, and each married another person. Held, that F. was the lawful wife of M., and could recover for

his death by defendant's wrongful act in 1893, under the statute of Georgia giving to the wife the right to recover for the homicide of her husband.

In an action by Samuel Thomas and others against the East Tennessee, Virginia & Georgia Railway Company, Frances and Joseph August intervened, and claimed to be entitled to recover against the receivers of the railroad for the death of Moses August while a passenger on defendant's road, and caused by its negligence, and the case was referred to Benj. H. Hill, Esq., special master. The receivers excepted to the master's report.

McCutcheon & Shumate, for defendant.

Dean & Smith, for interveners.

NEWMAN, Circuit Judge. The following is the report of the special master to whom the above-stated case was referred:

"To the Honorable, the Judges of the Circuit Court of the United States for the Northern District of Georgia: The intervention of Frances and Joseph August in the above-stated cause was referred to me as special master, with directions to hear and determine the facts and report the same to the court. In pursuance of said order, and after due notice, I have caused all parties to appear before me, and, after an examination of the witnesses and hearing of argument of counsel, have prepared my report. The evidence taken before me is herewith submitted, and approved by me as correct. I find as follows:

"(1) That the East Tennessee, Virginia & Georgia Railway Company was on February 11, 1893, operated by Henry Fink and Charles M. McGhee, as receivers appointed by this court.

"(2) That on February 11, 1893, Moses August was a passenger on cars of said railway, and was killed in a collision in Floyd county on said date; said collision occurring at a point six or eight miles from Rome, Georgia.

"(3) I find that said Moses August was without fault himself, and that said killing was the result solely of the negligence of the defendant, its employés and agents.

"(4) I find that said Moses August, at the time of his death, was between the age of fifty and fifty-five years, and was earning one dollar a day.

"Taking into consideration his expectation, under the mortality tables; his reduced capacity, affected by increased age; the further fact that he had no steady employment, but was working according as he could get jobs,—I think, a fair estimate as to the value of his life at the time of the killing, would be the sum of twelve hundred ($1,200.00) dollars.

"(5) I find that at the time of his death, the plaintiff Frances August was his lawful wife.

"On this point the master has had great difficulty in arriving at a conclusion. Plaintiffs set up a statutory marriage under the act of March 9, 1866 (Code Ga. § 1667). King v. State, 40 Ga. 244; Johnson v. State, 61 Ga. 306. The evidence establishing this marriage is conflicting, but, after a careful consideration of all of it, the master finds that Frances and Moses August, after a marriage ceremony between them when slaves, continued to live as husband and wife until some time in the year 1867, and that on the 9th day of March, 1866, they were so living together as husband and wife; and by that act they were made lawfully husband and wife, said act confirming, for all civil purposes, the marriage of persons of color. King v. State, 40 Ga. 244. It is contended by the defendant that said Frances and Moses were slaves, and that their marriage as slaves was illegal, and that such relation was not possible to slaves. This is true, but that was one of the very evils that the act of March 9, 1866, was intended to cure. That act, in the opinion of the master, was intended to make legal the relations of persons of color which before that time were illegal; and if, after the passage of this act, such persons were living together as man and wife, and continued to live together after the passage of the act, they were declared to be husband and wife. To avoid this rela-

tionship, which the law, in the interest of morality, cast upon them, such relationship should have been immediately dissolved after the publication of said act. The evidence is clear that in 1867 both Frances and Moses disregarded the relationship of husband and wife which the law cast upon them, and they separated, and each married again. The master is of the opinion, however, that the subsequent marriage of both parties simply made them guilty of the crime of bigamy, and could not affect their legal status, which had been fixed by the act of March 9, 1866.

"It is contended further by the defendant that the plaintiff Frances had not for at least 25 years before the death of said Moses claimed or received or derived any support or assistance from said Moses, and that his death was not any pecuniary loss to her or the said Joseph, or any loss of any kind, and that neither had any thoughts of ever deriving any benefits from his life, and that it would be illegal and unjust and inequitable to mulct this defendant on account of the death of the said Moses. The master, in rendering his decision, while fully sympathizing with this view, as matter of morality, yet is obliged to decide this point under principles of strict law, and where such principles are well established equity will follow the law. The master therefore holds that, it being shown that on March 9, 1866, the plaintiff and the deceased were living together as husband and wife, and continued to live in such relation until 1867, that she is entitled, as a matter of law, to recover for his killing. The master therefore finds, and so reports, that she is entitled to recover the sum of twelve hundred ($1,200.00) dollars. It was conceded that said Joseph, the son, was not entitled to recover, but that the suit could only be in the name of the wife. All of which is respectfully reported. Benj. H. Hill, Special Master.

"Filed in the Clerk's Office, 7th day of Feby., 1894. O. C. Fuller, Clerk."

Exceptions were filed by the receivers to the foregoing report, and the same were argued. Since the hearing, I have given considerable thought to the question involved. There is very little authority upon the question, and it is probably true, as stated by counsel for the receivers, that no such case has ever arisen before, or will ever arise again. No question is made as to the liability of the receivers, and very little as to the amount of the recovery. The evidence was conflicting, as stated by the master, as to whether the deceased and Frances August were living together as husband and wife at the time of the passage of the act of the legislature of Georgia in March, 1866; but the special master finds this in favor of the intervener, and it is conceded that there is sufficient evidence to justify the finding. The contention for the receivers here is that Frances August, having married another man, and having lived with him since 1884 as his wife, and having renounced in this way the former relationship with the deceased, she cannot now come in and take the benefit of that relationship for the purpose of recovering for his homicide. By the finding of the special master, under the provisions of the act of March, 1866, the intervener became the lawful wife of the deceased, and the fact of her subsequent marriage could not change the legal status of the parties by the relationship created by the act referred to. The statute of the state gives to the wife the right to recover for the homicide of the husband. Unquestionably she is his lawful wife. Therefore, controlled by what seems to be the law of the case, the report of the special master must be confirmed.